UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE AVET, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-2354 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| THOMAS J. DART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Thomas Dart and Cook County's motion to dismiss (Dckt. No. 16) is granted without prejudice. It appears that the complaint is two years too late. The Court grants leave to amend, so that Plaintiff can clear things up if he believes that he was timely.

Plaintiff George Avet is a Correctional Officer with the Cook County Sheriff's Office. *See* Am. Cplt., at ¶ 4 (Dckt. No. 15). He claims that Sheriff Dart and his agents retaliated against him because of his testimony in a 2018 deposition in an employment discrimination case. *Id.* at ¶ 23. During that deposition, Avet testified that certain members of the Sheriff's Office used racial epithets toward another employee. *Id.* at ¶¶ 17–18.

Avet alleges that Defendants retaliated against him a few different ways. They demanded and obtained private medical information, forced him to participate in a fitness-for-duty evaluation, secretly surveilled him while off-duty, and deprived him of benefits. *Id.* at ¶ 23.

On January 2, 2019, Avet filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") and the EEOC, alleging that his employer retaliated against him for his testimony. *Id.* at ¶ 7; *see also* Charge of Discrimination (Dckt. No. 15-1, at 5 of 5). His charge number was 440-2019-01883 (that number is important – more on that later).

The complaint alleges that Avet exhausted his administrative remedies. *See* Am. Cplt., at ¶ 8 (Dckt. No. 15). Specifically, Avet claims that the EEOC issued a Right to Sue letter on January 12, 2021 ("2021 Right to Sue letter"), but it was returned as undeliverable. *Id.* at ¶ 10.

According to the complaint, the EEOC re-sent the letter to Avet's former counsel (Heidi Sleper) on February 2, 2021. *Id.* She apparently received it that day, too, because Sleper sent the letter to Avet on the same day. *Id.* at ¶ 10 ("The letter was resent on February 2, 2021 by EEOC to Heidi Sleper, Avet's former attorney."); *id.* at ¶ 9 ("Plaintiff received a right-to-sue letter from the EEOC on February 2, 2021 via his then-counsel, Heidi Sleper, Esq."); *see also id.* at ¶ 12 (referring to the "January 12, 2021 right-to-sue letter that Avet received on February 2, 2021").

Avet attached the 2021 Right to Sue letter to his complaint. *See* 2021 Right to Sue Letter (Dckt No. 15-1, at 1 of 5); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). He also attached the accompanying cover letter from the EEOC dated February 2, 2021, as well as the email from the EEOC to his lawyer. *See* 2/2/21 Letter and Email (Dckt. No. 15-1, at 2–4 of 5). The 2021 Right to Sue letter included a charge number of 21B-2019-00873.

Note the difference between the charge number for the Charge of Discrimination and the charge number for the 2021 Right to Sue letter. Avet's complaint attached a Charge of Discrimination from 2019 with a charge number of 440-2019-01883. *See* Charge of Discrimination (Dckt. No. 15-1, at 5 of 5). But the complaint also attached a Right to Sue letter from 2021 with a charge number of 21B-2019-00873. *See* 2021 Right to Sue Letter (Dckt. No. 15-1, at 1 of 5). So the number of the Charge of Discrimination (ending in -1883) does not match the number of the Right to Sue letter (ending in -0873).

The disparity is problematic.  Each charge to the EEOC receives a unique identifying number (like a case number in federal court).  And the EEOC then issues a right to sue letter that is tied to that unique charge number.  So, a charge of discrimination with a charge number of 440-2019-01883 should receive a right to sue letter with a charge number of 440-2019-01883.  And on the flipside, a right to sue letter with a charge number of 21B-2019-00873 should tie to a charge of discrimination with a charge number of 21B-2019-00873.

The numbers should match.  But a charge of discrimination with a charge number of 440-2019-01883 and a right to sue letter with a charge number of 21B-2019-00873 is a mismatch.

Avet filed this lawsuit on May 2, 2021.  *See* Cplt. (Dckt. No. 1).  That filing took place 89 days after receiving the 2021 Right to Sue letter on February 2, 2021.  *See* Am. Cplt., at ¶ 11 (Dckt. No. 15).  So he filed suit within 90 days of receiving the 2021 Right to Sue letter. He alleged two counts:  (1) retaliation under Title VII, and (2) retaliation under the Illinois Human Rights Act ("IHRA").  *Id.* at Counts I & II.

Defendants now move to dismiss both counts under Rule 12(b)(6).[1]  Defendants argue that Avet's lawsuit is untimely because the EEOC issued the Right to Sue letter in 2019, not 2021.  *See* Defs.' Mtn. to Dismiss, at 4–5 (Dckt. No. 16).  Defendants also argue that Avet never received a right to sue letter from the IDHR at all, so he can't bring a state law claim.  *Id.* at 9.

---

[1]  A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case.  *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Defendants made other arguments, too, but for now, the Court only reaches the issue of exhaustion.

Congress placed time limits on employees when filing suit under Title VII. A plaintiff has 90 days from receipt of a right to sue letter from the EEOC to bring an employment discrimination claim. *See* 42 U.S.C. § 2000e-5(f)(1). "[T]wo types of receipt of a notice can start running the 90–day limitation period, and each does so equally well: actual receipt by the plaintiff, and actual receipt by the plaintiff's attorney, which constitutes constructive receipt by the plaintiff." *Reschy v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005).

Under the statute, Avet had 90 days to bring an employment discrimination claim, and the clock started ticking when he or his counsel received the Right to Sue letter from the EEOC. Avet alleges that the EEOC sent the letter to his lawyer, and his lawyer sent the letter to him, on February 2, 2021. *See* Am. Cplt., at ¶¶ 9–12 (Dckt. No. 15). He then filed suit on May 2, 2021. *See* Cplt. (Dckt. No. 1). If that's correct, then Avet met the deadline, because May 2 is 89 days after February 2.

Defendants moved to dismiss on the grounds that Avet is relying on the wrong Right to Sue letter. According to Defendants, the EEOC issued the Right to Sue letter in 2019, not 2021. So, as they see it, Avet is two years too late.

The argument implicitly rests on the charge numbers in the documents from the EEOC. Recall that Avet's Charge of Discrimination has a different charge number than the Right to Sue letter. *Compare* Charge of Discrimination (Dckt. No. 15-1, at 5 of 5) (listing the charge number as 440-2019-01883), *with* 2021 Right to Sue Letter (Dckt No. 15-1, at 1 of 5) (listing the charge number as 21B-2019-00873). According to Defendants, the operative Right to Sue letter is the one with the number that matches the Charge of Discrimination. And that letter is from 2019.

4

To support their motion to dismiss, Defendants attached a Right to Sue letter dated June 20, 2019 (the "2019 Right to Sue letter"). *See* 2019 Right to Sue Letter (Dckt. No. 16-1). And sure enough, that 2019 Right to Sue letter contains the same charge number (440-2019-01883) as Avet's 2019 Charge of Discrimination (440-2019-01883). So it's a match.

And it means that Avet is late, by a long shot. Avet needed to file suit within 90 days of receiving the 2019 Right to Sue letter, meaning the letter that authorized the filing of a claim based on the charges in the 2019 Charge of Discrimination. But instead of filing suit in 2019, Avet brought his claim in 2021. He filed this lawsuit on May 2, 2021, meaning 677 days after the date of the 2019 Right to Sue letter (dated June 20, 2019). So he's late.

Simply put, the complaint relies on the wrong Right to Sue letter. Avet alleges that his claim is timely based on the 2021 Right to Sue letter. But that letter was about something else – specifically, it was about whatever Avet claimed in the Charge of Discrimination with a charge number of 21B-2019-00873 (which is not in the record). Avet needed to file suit within 90 days of getting a Right to Sue letter with a charge number of 440-2019-01883, because *that* letter was the ticket to the courthouse for the Charge of Discrimination with a charge number of 440-2019-01883. And he didn't.

Avet does not muster much of a response. He does not deny that the number on the Charge of Discrimination needs to match the number on the Right to Sue letter. And he does not deny that the charge numbers in the EEOC documents attached to his complaint don't match.

He also does not deny that the Charge of Discrimination and the Right to Sue letter must be about the same core allegation of discrimination. A plaintiff cannot file suit about Discrimination A as described in Charge of Discrimination #1 based on Right to Sue letter #2 about Discrimination B. They have to be about the same thing. *See* 42 U.S.C. § 2000e-5(f)(1)

5

(authorizing a lawsuit about "*the* charge," not *a* charge) (emphasis added). Put another way, a plaintiff cannot revive an untimely claim by getting a Right to Sue letter about *something else*. Getting a new Right to Sue letter doesn't bring a stale claim back to life.

Avet also does not take issue with the fact that Defendants are relying on a Right to Sue letter that they submitted with their motion to dismiss. Typically, the sufficiency of pleadings depends on the content of the pleadings (and nothing else, including extrinsic documents). But not always.

"[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Allowing attachments to a motion to dismiss to become part of the pleadings "is a narrow exception" and "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Levenstein v. Salafsky*, 164 F.3d 343, 347 (7th Cir. 1998). "The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). The Court can take judicial notice of public records, too. *See McGee v. United Parcel Serv., Inc.*, 2002 WL 449061, at *2 (N.D. Ill. Mar. 22, 2002) ("[T]he court may take judicial notice of matters of public record, including records of administrative bodies such as the IDHR.").

Here, Avet referred to the Right to Sue letter in his amended complaint, and it is central to his claim. He expressly alleged that he exhausted his administrative remedies. *See* Am. Cplt., at ¶ 8 (Dckt. No. 15). Time and again, he alleged that the EEOC gave him the green light to file

this lawsuit by issuing a Right to Sue letter. *Id.* at ¶ 9 ("Plaintiff received a right-to-sue letter from the EEOC . . . ."); *id.* at ¶ 11 ("This suit was filed on May 2, 2021, within 90 days of Avet's receipt of the right-to-sue letter . . . ."). Those allegations made the Right to Sue letter part of the pleadings for purposes of the motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6). And in any event, Avet made no such procedural objection, so the argument is waived.

Avet puts forward only one response. He raises a question about when he received the 2019 Right to Sue letter: "the date that Plaintiff's former legal counsel received the June 20, 2019 issued Right to Sue letter from the EEOC is disputed." *See* Pl.'s Resp. to Defs.' Mtn. to Dismiss, at 4 (Dckt. No. 25).

Notice what Avet *doesn't* argue. He does not deny receiving the 2019 Right to Sue letter. Instead, he raises a question about *when* he received it. He doesn't reveal why it is "disputed."

The Postal Service is good at delivering mail. So good, in fact, that presumptions apply. "[A]bsent an established date of receipt, there is a presumption that letters are received five days from the mailing date." *Hardiman v. Lipnic*, 455 F. Supp. 3d 693, 701–02 (N.D. Ill. 2020). But "when the notice is delayed by fault of the plaintiff, the constructive receipt doctrine applies and the 90-day clock starts running once delivery is attempted at the last address provided." *Reschy*, 414 F.3d at 823.

Avet does not deny receiving the 2019 Right to Sue letter. And he does not put his own cards on the table about when he received it. He doesn't put forward a story about when it eventually arrived. For example, he doesn't say that the 2019 Right to Sue letter mysteriously arrived out of the blue in 2021, like a much-delayed message in a bottle. And he doesn't claim that his lawyer received the 2019 Right to Sue letter in 2019, but didn't give it to him until 2021 (which wouldn't matter anyway, given constructive notice).

Avet has given this Court no reason to stray from the presumption. So, this Court presumes that normal rules – and normal mail delivery – apply here. Avet presumptively received the 2019 Right to Sue letter within a few days of June 20, 2019. The receipt of that letter started the 90-day clock ticking. And by waiting until 2021 to file suit, he waited too long.

Maybe there is more to the story, so the Court is dismissing the claim with leave to amend. Maybe Avet and his lawyer did not receive the 2019 letter, through no fault of their own. Or maybe Avet attached the wrong Charge of Discrimination to his complaint, and the 2021 Charge (not the 2019 Charge) is the right charge after all. Or maybe there is some other explanation.

For that reason, this Court will give Avet another chance. This Court grants Plaintiff leave to file an amended complaint by December 20, 2021. Any future complaint must attach the operative Charge of Discrimination and the operative Right to Sue letter. Any future complaint also must specify when Plaintiff or his counsel received the operative Right to Sue letter. The Court reminds Plaintiff of his obligations of candor under the Federal Rules.

The other claim in the complaint is a state law claim. Avet alleges retaliation under the IHRA. *See* Am. Cplt., at Count I (Dckt. No. 15). Defendants raise an exhaustion issue.

The IHRA requires a plaintiff to exhaust his administrative remedies with the IDHR by filing a charge of discrimination. *See Clark v. Law Offs. of Terrence Kennedy Jr.*, 2021 WL 308883, at *7 (N.D. Ill. 2021) (citing 775 ILCS 5/8-111(B)(1), and 775 ILCS 5/7A-102(G)(2)). From that moment forward, a claimant can exhaust his administrative remedies though a few routes.

Ten days after the filing of a charge, the IDHR notifies the complainant of his right – which must be exercised within 60 days of receiving the notice – to "opt out" of its investigation

of the charge and directly commence a civil action in court. *See* 775 ILCS 5/7A-102(B) ("The Department shall, within 10 days of the date on which the charge was filed, serve a copy of the charge on the respondent and provide all parties with a notice of the complainant's right to opt out of the investigation within 60 days[.]"); 775 ILCS 5/7A-102(C-1) ("At any time within 60 days after receipt of notice of the right to opt out, a complainant may submit a written request seeking notice from the Director indicating that the complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction.").

"If the complainant does not timely opt out of IDHR's investigation, he may file a civil suit once the IDHR investigates the charge and issues a report, *see* 775 ILCS 5/7A–102(D), or in the event that IDHR fails to issue a report within a year of the charge being filed, *see* 775 ILCS 5/7A–102(G)(2)." *See Smith v. City of Chicago*, 2021 WL 463235, at *5 (N.D. Ill. 2021).

So there are "three exhaustion pathways." *Id.* First, a claimant can opt out of the IDHR's investigation within 60 days, and then file suit. *Id.* Second, a claimant can decline to opt out, and then can wait at least one year while the state agency investigates the charge. *Id.* Third, a plaintiff can opt out and then file suit after the state agency issues a final decision. *Id.*; *see also Prusaczyk v. Hamilton County Coal, LLC*, 2020 WL 598377, at *2 (S.D. Ill. 2020); *Baranowska v. Intertek Testing Servs. NA, Inc.*, 2020 WL 1701860, at *3 (N.D. Ill. 2020).

A right to sue letter from the EEOC is not the same thing as a report from the state agency. Although the EEOC and IDHR have a workshare agreement, "a right to sue letter from the EEOC cannot be used as a substitute for a final order from the Commission." *Davis v.*

*Metro. Pier & Exposition Auth.*, 2012 WL 2576356, at \*9 (N.D. Ill. 2012); *see also Petez v. Cook Cty. Sheriff's Off.*, 2020 WL 7772888, at \*3 (N.D. Ill. 2020).[2]

Here, Avet alleges that he "exhausted his administrative remedies." *See* Am. Cplt., at ¶ 8 (Dckt. No. 15). Avet's 2019 Charge of Discrimination was cross-filed between the EEOC and the IDHR, so he did submit a charge to the state agency. *Id.* at ¶¶ 7, 12.

At that point, the story gets muddled. The complaint alleges that "[m]ore than 60 days have elapsed since Plaintiff filed his charge of discrimination with the Illinois Human Right Department and the EEOC." *Id.* at ¶ 13. The significance of that 60-day period is not clear. Maybe Plaintiff was referring to the 60-day window to opt out of the investigation by the state agency.

But if so, Avet does not allege whether he opted out. It's not clear when the IDHR began and completed its investigation. The complaint does not allege whether the IDHR issued a report, either, or whether he ever asked the IDHR to review the EEOC's decision. If he received a report from the IDHR, it is unclear when he received it.

Plaintiff compounds the uncertainty by alleging that the *2021* Right to Sue letter from the EEOC "followed the Illinois Department of Human Rights' [sic] ('IDHR') investigation into Avet's Charge." *Id.* at ¶ 12. Maybe the 2021 Right to Sue letter came after – not before – the IDHR's investigation because that investigation involved the allegations from the *2019* Charge of Investigation.

_____

[2] Different procedures apply if a complainant submits a charge of discrimination with both state and federal authorities. "If the EEOC investigates the charge first, the IDHR takes no action on the charge – and the one-year period for the IDHR to investigate is tolled – until the complainant notifies it of the EEOC's determination." *Baranowska*, 2020 WL 1701860, at \*3; *see also* 775 ILCS 5/7A-102(A-1)(1). At that point, the IDHR notifies the claimant that it "will adopt the EEOC's determination," unless the claimant requests a state review of the EEOC's decision. *See* 775 ILCS 5/7A-102(A-1)(3). But here, the complaint does not reveal which entity – the EEOC, or the IDHR – investigated Avet's allegation first. The Court assumes that the EEOC investigated first because of the 2019 Right to Sue letter.

10

In any event, the lay of the land is uncertain on the exhaustion of the state law claim. So the Court dismisses the claim, with leave to amend.[3] The Court encourages Avet to attach documents sufficient to show the exhaustion of administrative remedies on the state law claim. At that point, this Court can assess the federal and state claims (and possibly decide whether to exercise supplemental jurisdiction over the state law claim if there is no federal law claim).

The motion to dismiss is granted without prejudice. The Court grants Plaintiff leave to file a second amended complaint by December 20, 2021.

Date:   December 10, 2021

_____

Steven C. Seeger
United States District Judge

---

[3] Strictly speaking, the exhaustion of administrative remedies is an affirmative defense. And a plaintiff does not have an obligation to plead around an affirmative defense when filing a complaint. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). For the federal claim, the Court concludes that the 2019 Right to Sue letter is part of the pleading (or, at least, that the Court can consider it at the motion-to-dismiss stage). And the Court also concludes that the 2019 Right to Sue letter shows that Avet failed to file a timely claim because he waited more than 90 days. So, the Court can dismiss it because there appears to be no timely claim. For the state claim, the situation is a little different. There, based on the complaint itself, it is unknown whether Avet exhausted his administrative remedies. Ordinarily, this Court would allow that claim to go forward because the complaint does not "unambiguously establish all the elements of the defense." *Id.* Even so, Avet presumably is going to amend the complaint anyway. So there is no harm in dismissing the state count too, and ordering Avet to refile with an amended state claim. It adds clarity to a murky situation, and moves the ball forward.