IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE AVET,                              )
        Plaintiff,                   )
                              )
                              )
        v.                            )          No. 21-cv-2354
                              )
THOMAS J. DART, *et al.,*                 )          Judge Steven C. Seeger
                              )
        Defendants.                   )
                              )

**MOTION TO SEAL OR, ALTERNATIVELY, REDACT,
MEMORANDUM OPINION AND ORDER**

Now comes the Plaintiff, George Avet, pursuant to Local Rule 26.2(c), and moves this

Court for an Order sealing or, alternatively, redacting the Memorandum Opinion and Orders in the

above captioned matter dated December 10, 2021 and July 28, 2022. In support of this motion,

Plaintiff states as follows:

      1.      Plaintiff's career has been in law enforcement, having worked for the Cook County

Sheriff for 19 years.

      2.      Two Memorandum Opinion and Orders were entered in this case, on December 10,

2021 granting Defendants' Motion to Dismiss without prejudice, **ECF30**, and on July 28, 2022,

granting Defendant's Motion to Dismiss with prejudice, **ECF 43.**

      3.      Both Opinions identify Plaintiff as a "Correctional Officer with the Cook County

Sheriff's Office." Also, by their very nature the Opinions revealed that Plaintiff had sued his

employer and had provided deposition testimony supporting another employee's claim of racial

discrimination. Both Orders also reveal that Plaintiff had medical issues, including a fitness-for-

duty evaluation required by the County. With the commonplace use of Google and other search

vehicles for employers to seek information on possible hires, any potential future employer is likely to reject an applicant with a history of litigating against a past employer.

4.      When "George Avet" is searched on the internet, search engines Google, Bing and Duck Duck Go, put one or both of the Memorandum Opinion and Orders as the top items, making it easy for any prospective employer to become aware of Plaintiff's litigation history with Cook County.  The Orders are made available to search engines by Court_Opinions@ao.uscourts.gov which is hosted by the Government Publishing Office.

5.      Plaintiff has sought to have an order removed from internet search engines through communication with Court_Opinions@ao.uscourts.gov .  As a result of that communication Court_Opinions@ao.uscourts.gov has indicated that it will not, on its own, remove an order from internet access but would honor a court order to remove the opinion from public access ("If you would like to pursue redaction or removal of the opinion from public access on PACER and GPO's website, you must petition the court directly.  Unless we receive instructions or an order from the Court, this document will remain available as part of the collection of federal court opinions.") **See Exhibit A.**

6.      Plaintiff has also had correspondence with the Director of the Government Publishing Office, Mr. Hugh Halpern. In which Halpern viewed Avet's concerns to be legitimate but directed him to the courts for relief. **See Exhibit B** ("Your best course of action is to contact the Court at the email address above and make your request to them.").

7.      Local Rule 26.2(c), contemplates the sealing of Memorandum Opinion's under a variety of circumstances. See *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. U.S.,* 18-cv-00825, page 5 footnote, 4; *In Re Search for Info. Stored at Premises Controlled by Google*, 481 F Supp. 3d 730, 757 (N.D. Ill. 2020); *In Re Suppressed*, 04-07-2022, 20 M 118, page 8.

8.      The Orders at issue here are based upon the unique facts of the case and, as a result, neither order serves as a significant precedent.

9.      In another Avet case, case no. 14-cv-04555, Plaintiff filed a motion similar to this. As a result, Judge Pallmeyer entered an order on March 25, 2024 redacting portions of the Order which identified Plaintiff. **Exhibit C.** The result being that case no. 14-cv-04555 no longer comes up when "George Avet" is searched. **Exhibit D.**

10.     Attached as Exhibit **Exhibit E** are copies of the December 10, 2021 and July 28, 2022 Orders with "George Avet" and "Avet" redacted.

Wherefore, Plaintiff requests an order sealing the December 10, 2021 and July 28, 2022 Memorandum Opinion and Orders or, alternatively, redacting Plaintiff's name from each opinion.

Respectfully submitted,

/s/ Thomas C. Crooks
Attorney for Plaintiff,

Thomas C. Crooks, No.0547336
70 West Madison Street, Suite 1950
Chicago, Illinois 60602-4298
Office: (312) 641-2260
Fax: (312) 641-5220
Email: tcrooks@barristers.com

3

**Thomas Crooks**

| | |
|---|---|
| **From:** | George Avet <georgeavetjr@gmail.com> |
| **Sent:** | Friday, February 23, 2024 10:38 AM |
| **To:** | Thomas Crooks |
| **Subject:** | Fwd: Request for restriction of access 21vc02354 |

Begin forwarded message:

> **From:** AOdb_Court_Opinions <Court_Opinions@ao.uscourts.gov>
> **Date:** February 23, 2024 at 8:56:55 AM CST
> **To:** George Avet <georgeavetjr@gmail.com>
> **Subject: Re: Request for restriction of access 21vc02354**

Unfortunately, we cannot assist you with your request.

The posting of opinions on the GPO site is consistent with the E-Government Act's requirement for the substance of all written opinions, issued after April 16, 2005, to be made available in a text searchable format.  See Pub. L. No. 107-347, Title II, Section 205.  The Judicial Conference policy regarding written opinions states that the responsibility for determining which documents meet the definition of an opinion rests with the authoring judge.

The subject document has been marked as an opinion in the Court's case management system and is publicly available on PACER without charge.  Pursuant to a Judicial Conference initiative to facilitate greater public access to court opinions, the court participates in sending its publicly available opinions to GPO's govinfo website.

**If you would like to pursue redaction or removal of the opinion from PACER and govinfo, you must petition the court directly.**

Unless we receive instructions or an order from the Court, this document will remain available as part of the collection of federal court opinions on PACER and govinfo.

AOdb_Court Opinions
AOdb_Court_Opinions Court_Opinions@ao.uscourts.gov

**From:** George Avet <georgeavetjr@gmail.com>
**Sent:** Thursday, February 22, 2024 7:49 PM
**To:** AOdb_Court_Opinions <Court_Opinions@ao.uscourts.gov>
**Subject:** Request for restriction of access 21vc02354

CAUTION - EXTERNAL:

Hello,



1

I write regarding the attached docket 21-cv-02354. The contents contains my protected and private medical information. I am requesting that the information be sealed.

Thank you,

George Avet

www.govinfo.gov/app/details/USCOURTS-ilnd-1_21-cv-02354

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

+ Scott Matheson, Superintendent of Documents

Thank you for your note.

You have asked for a court opinion in the GovInfo USCOURTS collection to be blocked from search engine indexing or removed. The Government Publishing Office hosts this collection for the Administrative Office of United States Courts. Unfortunately, because they are the only ones responsible for the content of the collection, only they can make changes to the availability of an opinion. They may be contacted at Court_Opinions@ao.uscourts.gov.

By policy, we are unable to block any search engine from crawling the public information in the GovInfo repository. We also have no control over the content of their materials.

Your best course of action is to contact the Court at the email address above and make your request to them.

Thank you for your inquiry and I'm sorry I cannot assist you more directly. Best. -- Hugh

EXHIBIT
B
tabbies

Case: 1:14-cv-04555 Document #: 75 Filed: 03/18/24 Page 1 of 1 PageID #:494

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF NextGen 1.7.1.1
### Eastern Division

George L. Avet

                 Plaintiff,

v.

Thomas J. Dart, et al.

                 Defendant.

Case No.: 1:14−cv−04555
Honorable Rebecca R. Pallmeyer

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, March 18, 2024:

       MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone motion hearing held regarding Motion by Plaintiff to Seal Memorandum Opinion and Order [71]. For the reasons stated on the record, this motion is entered and continued. Plaintiff is invited to submit a proposed order and a redacted version of the Memorandum Opinion and Order. Mailed notice. (cp, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GEORGE AVET,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 14 C 4555** |
| | ) | |
| **THOMAS J. DART, in his official capacity** | ) | **Judge Rebecca R. Pallmeyer** |
| **as COOK COUNTY SHERIFF and** | ) | |
| **COUNTY OF COOK,** | ) | |
| **Defendants.** | ) | |
| | ) | |

**ORDER**

This cause comes before the Court on Plaintiff's Motion to Seal Memorandum Opinion and Order, related to this court's Memorandum Opinion and Order dated February 26, 2016. The court being fully advised in the premises, orders as follows:

1.  The court's February 26, 2016 Memorandum Opinion and Order shall be redacted to remove Personal Identifying Information, including plaintiff's.

2.  The February 26, 2016 Memorandum Opinion and Order, with redactions, is attached.

ENTER:

Dated: March 25, 2024

REBECCA R. PALLMEYER
United States District Judge

1

From: **AOdb_Court_Opinions** Court_Opinions@ao.uscourts.gov
Subject: **Re: 21-2354 - Avet v. Dart, Sheriff of Cook County et al -**
**Content Details -**
Date: **Apr 2, 2024 at 7:43:01 AM**
To: **George Avet** georgeavetjr@gmail.com

Greetings George,

Please obtain an order from the court for this case to be removed from GPO.

Thank you

---

**From:** George Avet <georgeavetjr@gmail.com>
**Sent:** Monday, April 1, 2024 8:16 PM
**To:** AOdb_Court_Opinions <Court_Opinions@ao.uscourts.gov>
**Subject:** Re: 21-2354 - Avet v. Dart, Sheriff of Cook County et al - Content Details -

**CAUTION - EXTERNAL:**

**Hello,**

**Thank you very much for your assistance in the 14-4555. I am kindly asking if you can place this matter in a non index status for the same reasons cited in the 2014 court order issued last week as we work through this matter.**

**Thank you,**

**URL below**

https://www.govinfo.gov/app/details/USCOURTS-ilnd-1_21-cv-02354

On Apr 1, 2024, at 2:47 PM, AOdb_Court_Opinions
<Court_Opinions@ao.uscourts.gov> wrote:

Dear George Avet,

The GPO has confirmed that the case 14-4555 is no longer on google search. Our office also verified it. Please go ahead and google and let me know if you still see it online.

Thank you

---

**From:** George Avet <georgeavetjr@gmail.com>



## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

███████████,        )
                                )
         Plaintiff,      )     Case No. 21-cv-2354
                                )
     v.                )     Hon. Steven C. Seeger
                                )
THOMAS J. DART, *et al.*,     )
                                )
        Defendants.    )
                                )

### <u>MEMORANDUM OPINION AND ORDER</u>

███████, a correctional officer with the Cook County Sheriff's Office, testified in support of a race discrimination case brought by a colleague. That testimony, as ██ tells it, cost him. He claims that his supervisors retaliated against him in a number of different ways, punishing him for speaking up. He brings a retaliation claim under Title VII.

Before coming to the federal courthouse, ██ filed a charge of discrimination with the EEOC. Actually, he did so twice. But the first charge of discrimination was the same as the second charge of discrimination. The EEOC issued a right to sue letter on the first charge in 2019, and issued a second right to sue letter on the second charge in 2021. ██ filed suit 89 days after receiving the second right to sue letter.

Defendants moved to dismiss. For the reasons stated below, the motion is granted.

### Background

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast





EXHIBIT
E

the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Plaintiff ███████ is a correctional officer with the Cook County Sheriff's Office. *See* Second Am. Cplt., at ¶ 3 (Dckt. No. 34). The case at hand is not █████ first experience with the legal system. He was a witness in another discrimination case filed by a colleague, Percy Taylor, against the Sheriff's Office. *Id.* at ¶ 23; *see also Taylor v. Dart*, No. 13-cv-1856 (N.D. Ill.).

In that case, ████ testified at deposition that investigators in the Sheriff's Office of Professional Review used racial epithets against Taylor. *See* Second Am. Cplt., at ¶ 24 (Dckt. No. 34). He expected to testify at trial, too, but that case settled not long ago. *Id.* at ¶¶ 26–28; Stipulation of Dismissal, *Taylor v. Dart*, No. 13-cv-1856 (N.D. Ill. Jan. 3, 2022), Dckt. No. 604.

The case at hand is about what happened to █████ after he testified in the *Taylor* case. According to the complaint, Dart and his agents retaliated against █████ for testifying in support of Taylor. *See* Second Am. Cplt., at ¶ 29 (Dckt. No. 34). He claims that the Sheriff demanded private medical information, obtained private medical documents outside the proper legal process, sent █████ for a fitness-for-duty evaluation, and surveilled █████ whereabouts while off-duty. *Id.*

The complaint offers some details. Dart sent █████ for a fitness-for-duty evaluation almost immediately after his deposition, without any legitimate reason. *Id.* at ¶ 30. And Defendants sent private detectives and vehicles with cameras to sit outside █████ residence. *Id.* at ¶ 31. The surveillance started in October 2018 and continued for months. *Id.* █████ also alleges that his workers' compensation benefits were terminated around February 2021 without any explanation. *Id.* at ¶ 32.

████ responded by filing a charge of discrimination with the EEOC. *Id.* at ¶¶ 6, 8–9. Actually, he filed two, but they are substantively the same.

So far, so good. But from this point forward, things can seem a little complicated. At first blush, anyway. Before going any further, the Court will offer a bit of a preview.

Here's the basic story. ████ filed, and then refiled, a charge of discrimination. He filed them with two agencies, the EEOC and the Illinois Department of Human Rights. And those two agencies, in turn, assigned different numbers to each of the two charges. The two agencies issued separate responses, too.

So there are a lot of interwoven strands, and it is easy to get everything tied in a knot. Trying to keep everything straight by using the numbers assigned by the two agencies would make any reader want to run for the hills. So, in the interest of clarity, the Court will simply call them Charge of Discrimination #1 and Charge of Discrimination #2. Again, the most important thing to keep in mind is that Charge of Discrimination #1 and Charge of Discrimination #2 are substantively identical.

With that wind-up, the story unfolded as follows.

On January 2, 2019, ████ counsel filed a charge of discrimination with the EEOC and with the Illinois Department of Human Rights. *Id.* at ¶¶ 6–7. That's Charge of Discrimination #1. The EEOC assigned that charge a number, and cross-filed that charge with the IDHR, who assigned it a different number. *See* 1/2/19 Charge of Discrimination #1 (Dckt. No. 34-1, at 1 of 5) (reflecting an EEOC number of 440-2019-01883, and an IDHR number of 2019CR2794).

In that opening salvo, ████ alleged that the Cook County Sheriff's Office had retaliated against him for testifying in the *Taylor* case. "Within the last 300 days and on a continuing and ongoing basis, Respondent has retaliated against me in violation of Title VII and the IHRA on a

3

continuing and ongoing basis. I testified in support of Percy Taylor's federal lawsuit, which includes claims of racial discrimination and retaliation against Respondent, including in a deposition on 10/29/18." *Id.*

▮▮▮ then described the alleged retaliation. Notice how closely it tracks to the allegations in the complaint at hand, meaning the claims before this Court. "On an ongoing basis, Respondent has retaliated against me by obtaining private mental health documents of mine outside of the legal process, placing me under surveillance, and requiring that I perform a fitness for duty examination, among other retaliatory acts. Respondent has failed to take effective remedial action to ensure that the retaliation stops in violation of Title VII and the Illinois Human Rights Act." *Id.*

Charge of Discrimination #1 was signed by ▮▮▮. By the look of things, ▮▮▮ submitted a signed and notarized copy of Charge of Discrimination #1 to the EEOC. *Id.* The notary's signature appears on the bottom left of the page. *Id.* But it seems that ▮▮▮ submitted an unnotarized copy of Charge of Discrimination #1 to the IDHR.

That omission did not escape the attention of the Illinois Department of Human Rights. On March 26, 2019, the IDHR notified ▮▮▮ attorney that his charge of discrimination was "unperfected." *See* Second Am. Cplt., at ¶ 8 (Dckt. No. 34). The parties don't explain what that term means, but the Court assumes that it refers to the lack of a notarized signature.

On April 5, 2019, ▮▮▮ counsel submitted the claim again. *Id.* at ¶ 9. That's Charge of Discrimination #2. *See* 4/5/19 Charge of Discrimination #2 (Dckt. No. 34-2, at 3 of 19); *see also* 4/5/19 Letter (Dckt. No. 34-2, at 2 of 19) (a letter from ▮▮▮ counsel to the IDHR) ("Enclosed is the **re**-signed and notarized Charge of Discrimination for Mr. ▮▮▮▮ in accordance with your March 26, 2019 correspondence.") (emphasis in original). This time, ▮▮▮ signed it, and so

4

did a notary. *See* 4/5/19 Charge of Discrimination #2; *see also* Second Am. Cplt., at ¶ 9 (Dckt. No. 34).

███ submitted Charge of Discrimination #2 to the IDHR. *See* 4/5/19 Charge of Discrimination #2 (Dckt. No. 34-2, at 3 of 19) (reflecting an IDHR number of 2019CF1612). He expressly asked that the IDHR file it with the EEOC, too. *Id.* ("I also want this charge filed with the EEOC."). The EEOC and the IDHR have a workshare agreement, so if a person files a charge with the state agency, the federal agency will receive it too (and vice versa). *See Winston v. Dart*, 2021 WL 3633918, at *8 (N.D. Ill. 2021) ("[T]he IDHR and EEOC have a workshare agreement whereby a charge filed with one is automatically cross-filed with the other . . . .") (citing *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016)).

The EEOC later assigned Charge of Discrimination #2 a number. Actually, for whatever reason, the EEOC assigned three numbers to Charge of Discrimination #2.[1]

The *numbers* assigned to Charge of Discrimination #2 by the EEOC and the IDHR are less important than the *substance* of Charge of Discrimination #2. The content of Charge of Discrimination #2 was identical to the content of Charge of Discrimination #1.

In fact, Charge of Discrimination #2 simply pointed to Charge of Discrimination #1. Charge of Discrimination #2 asked ███ to provide the "particulars of the charge." *See* 4/5/19 Charge of Discrimination #2 (Dckt. No. 34-2, at 3 of 19). In response, ███ wrote "SEE ATTACHED," and then attached the notarized copy of Charge of Discrimination #1. *Id.*; *compare* 1/2/19 Charge of Discrimination #1 (Dckt. No. 34-1, at 1 of 5), *with* 4/5/19 Charge of Discrimination #2 (Dckt. No. 34-2, at 3–4 of 19) (attaching Charge of Discrimination #1 to

---

[1] *See* EEOC Charge of Discrimination No. 21B-2019-00873 (Dckt. No. 34-2, at 9 of 19); EEOC Charge of Discrimination No. 21B-2019-00873C (Dckt. No. 34-2, at 11 of 19); EEOC Charge of Discrimination No. 21BA90873 (Dckt. No. 34-2, at 8 of 19).

Charge of Discrimination #2). So Charge of Discrimination #2 piggybacked on Charge of Discrimination #1.

It didn't take the EEOC long to respond. On June 20, 2019, the EEOC issued a right to sue letter. That's Right to Sue Letter #1. *See* Second Am. Cplt., at ¶ 7 (Dckt. No. 34); 6/20/19 Right to Sue Letter #1 (Dckt. No. 34-1, at 2 of 5). Right to Sue Letter #1 responded to charge no. 440-2019-01883, which is Charge of Discrimination #1. *See* 6/20/19 Right to Sue Letter #1.

The EEOC informed ███ that he had 90 days to file suit: "You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed __WITHIN 90 DAYS__ of your receipt of this notice; or your right to sue based on this charge will be lost." *Id.* (emphasis in original).

The complaint does not reveal when, exactly, ███ received Right to Sue Letter #1. But he received it no later than July 17, 2019. ███ counsel sent a letter to the IDHR on July 17, 2019, and she attached a copy of the EEOC's Right to Sue Letter #1. *See* Second Am. Cplt., at ¶ 11 (Dckt. No. 34); *see also* 7/17/19 Letter (Dckt. No. 34-2, at 6 of 19) ("The above charge of discrimination was cross-filed with the EEOC and the IDHR. Enclosed is the EEOC's final determination dated June 20, 2019.").[2]

███, however, did not strike while the iron was hot. He did not file suit against the Sheriff within 90 days. In fact, he didn't sue the Sheriff in 2019. Or in 2020.

---

[2] The state reaction to the two charges of discrimination isn't particularly relevant to ███ claim in the case at hand. The right to bring a federal claim in federal court depends on when the claimant received a right to sue letter from the EEOC, not from a state agency. Still, for an interested reader, the IDHR dismissed Charge of Discrimination #1 on October 25, 2019, and dismissed Charge of Discrimination #2 on May 21, 2020. *See* Second Am. Cplt., at ¶¶ 7, 13 (Dckt. No. 34); *see also* 10/25/19 Notice of Dismissal (Dckt. No. 34-1, at 4–5 of 5) (covering Charge of Discrimination #1); 5/21/20 Notice of Dismissal (Dckt. No. 34-2, at 12–14 of 19) (covering Charge of Discrimination #2).

For whatever reason, Charge of Discrimination #2 kept percolating within the EEOC, even though it was the same as Charge of Discrimination #1. On January 12, 2021, the EEOC issued a right to sue letter on Charge of Discrimination #2. That's Right to Sue Letter #2. *See* Second Am. Cplt., at ¶ 15 (Dckt. No. 34); 1/12/21 Right to Sue Letter #2 (Dckt. No. 34-2, at 15 of 19) (referring to charge no. 21B-2019-00873, which is Charge of Discrimination #2).

The EEOC's letter did not get in ███ hands right away. It was returned to sender. *See* Second Am. Cplt., at ¶ 16 (Dckt. No. 34); *see also* Envelope (Dckt. No. 34-2, at 17 of 19). The EEOC then emailed a copy of Right to Sue Letter #2 to ███ counsel on February 2, 2021. *See* Second Am. Cplt., at ¶ 16; *see also* 2/2/21 Letter (Dckt. No. 34-2, at 19 of 19). Once again, the EEOC forewarned ███ that he had only 90 days to file suit. "Please note that you have only 90 days from the date of receipt in which to file suit in federal court." *See* 2/2/21 Letter.

███ filed the lawsuit at hand on May 2, 2021. That's 89 days after ███ counsel received Right to Sue Letter #2. But it's 655 days (or more) after ███ counsel received Right to Sue Letter #1.

Defendants moved to dismiss. *See* Defs.' First Mtn. to Dismiss (Dckt. No. 9). ███ mooted that motion by filing an amended complaint. *See* First Am. Cplt. (Dckt. No. 15). Then, Defendants moved to dismiss the amended complaint. *See* Defs.' Second Mtn. to Dismiss (Dckt. No. 16).

The Court denied the second motion to dismiss without prejudice, granting ███ leave to amend. *See* 12/10/21 Mem. Opin. and Order (Dckt. No. 30). Specifically, the Court noted that ███ might have filed his complaint too late, based on documents that he attached and documents that Defendants had provided. *Id.* at 6–8. The Court gave ███ a second opportunity to amend his complaint.

7

███, in turn, filed the complaint at hand. *See* Second Am. Cplt. (Dckt. No. 34). He brings only one claim: unlawful retaliation under Title VII. *Id.* He supported his allegations and clarified the timeline by attaching a collection of documents.

Defendants now move to dismiss the second amended complaint. *See* Defs.' Third Mtn. to Dismiss (Dckt. No. 37).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## Analysis

Defendants offer two reasons for dismissal. They argue that the complaint is untimely, and fails to plead sufficient facts to state a claim. *See* Defs.' Third Mtn. to Dismiss (Dckt.

No. 37). The Court agrees that ████ filed his claim too late. The complaint itself reveals that the claim is untimely.

Title VII sets a deadline to file a retaliation claim in federal court. A plaintiff can bring a complaint "within ninety days" of receiving a right to sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . . ."). Filing suit on day 91 is a day too late. *See MacGregor v. DePaul Univ.*, 2010 WL 4167965, at *2 (N.D. Ill. 2010) (collecting cases).

Most of the time, the statute of limitations is not an issue at the motion to dismiss stage. After all, the statute of limitations is an affirmative defense, and a plaintiff does not have to plead around affirmative defenses. *See Del Korth v. Supervalu, Inc.*, 46 F. App'x 846, 848 (7th Cir. 2002) ("A defendant's argument that a discrimination claim is untimely because it was filed outside the 90-day statute of limitations is . . . an affirmative defense."); *see also Hardiman v. Lipnic*, 455 F. Supp. 3d 693, 701 (N.D. Ill. 2020). "The mere presence of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) ("That is, a plaintiff ordinarily need not anticipate an attempt to plead around affirmative defenses."). A plaintiff does not have to plead affirmatively that he or she has a timely claim.

But a complaint can defeat itself. Sometimes "the allegations of the complaint . . . set forth everything necessary to satisfy the affirmative defense." *See United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). If the allegations of the complaint show that the complaint is untimely, then a defendant can move to dismiss based on the statute of limitations. That's

9

consistent with the overarching principle that the sufficiency of a complaint turns on the allegations of the complaint itself.

A plaintiff can book his or her own ticket out of the courthouse. But "dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *See Hyson USA, Inc.*, 821 F.3d at 939 (emphasis in original). "In other words, the plaintiff 'must affirmatively plead himself out of court.'" *Id.* (quoting *Chicago Bldg. Design v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014)).

Here, ▮▮▮ complaint confirms that he filed suit too late. He filed Charge of Discrimination #1 on January 2, 2019, and he received Right to Sue Letter #1 no later than July 17, 2019. That letter started the clock ticking.

There wasn't much time on the clock. ▮▮▮ had 90 days to bring any claim arising out of the retaliatory acts described in Charge of Discrimination #1. The deadline was October 15, 2019. At that point, the window of opportunity closed.

▮▮▮ missed the deadline, by a wide margin. He did not file suit until May 2, 2021. That's more than a year and a half late. He filed suit in 2021 when he needed to file suit by 2019.

It would be one thing if the amended complaint was about some other discriminatory act. A right to sue letter doesn't govern the complaint if the complaint and the right to sue letter are about two different things.

But here, Charge of Discrimination #1 and this lawsuit are about the same thing, and cover the same ground. Both allege that the Cook County Sheriff's Office retaliated against ▮▮▮ for testifying in the *Taylor* case. The allegations of the retaliation are the same, too, involving meddling with health records, requiring fitness exams, and surveilling his home.

*Compare* 1/2/19 Charge of Discrimination #1 (Dckt. No. 34-1, at 1 of 5) ("I testified in support of Percy Taylor's federal lawsuit, which includes claims of racial discrimination and retaliation against Respondent, including in a deposition on 10/29/18. On an ongoing basis, Respondent has retaliated against me by obtaining private mental health documents of mine outside of the legal process, placing me under surveillance, and requiring that I perform a fitness for duty examination, among other retaliatory acts."), *with* Second Am. Cplt., at ¶ 29 (Dckt. No. 34) ("[N]early immediately following ███ deposition testimony, the Sheriff, through his agents, began a campaign of retaliation against ███, including demanding his private medical information, sending him for fitness-for-duty evaluation, conducting secret surveillance of his whereabouts and doings off-duty, and obtaining private medical documentation of his outside of proper legal process and without an appropriate basis to do so, and loss of benefits.").

The fact that ███ also submitted Charge of Discrimination #2, and received Right to Sue Letter #2, cannot save the day. Charge of Discrimination #2 is no different than Charge of Discrimination #1. The content is identical, word for word. The content is the same, so the deadline was the same.

A plaintiff cannot reset the deadline, stop the clock, or grant himself more time by complaining about the same thing twice. Congress set the goalposts, and a plaintiff cannot move them by complaining about the same thing multiple times. Any other approach would render the statutory deadline meaningless, and would incentivize claimants to raise the same issue over and over again.

A claimant cannot resuscitate an expired claim by submitting it a second time. And receiving a second right to sue letter about an expired claim cannot bring it back to life, either. For that reason, courts often dismiss complaints based on expired right to sue letters, even when

11

a plaintiff has a later-in-time letter, too. *See, e.g., Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004) ("Dandy filed her first relevant EEOC charge on February 18, 1997 and the second on October 2, 1997. She received her right-to-sue letter for both charges on April 30, 1999. She filed her third EEOC charge on September 5, 2000. As Dandy filed suit in federal court more than 90 days after she received her right-to-sue letter from her first and second EEOC charges, the allegations stated therein are not properly before us and she is limited to the claims explicitly stated in her third EEOC charge or claims 'reasonably related' to those charges.") (citation omitted); *MacGregor*, 2010 WL 4167965, at *2–3 (dismissing claims based on timeliness from 91-day-old letters but not claims from 83-day-old letters); *Abdullahi v. Prada USA Corp.*, 2007 WL 1521711, at *3 (N.D. Ill. 2007) ("The 90-day filing requirement would indeed be meaningless if a party could revive claims by simply filing a new charge."), *aff'd in part, rev'd in part on other grounds*, 520 F.3d 710 (7th Cir. 2008) (affirming the dismissal of the claims made under the old charges); *Mitchell v. Elec. Sys., Inc.*, 1997 WL 321763, at *1–2 (N.D. Ill. 1997).

██████ argues that his filing deadline should be equitably tolled because the delay was not his fault. *See* Pl.'s Resp., at 4–5 (Dckt. No. 40). Instead, he blames the procedural confusion caused by multiple charges and multiple right to sue letters. *Id.*

The 90-day period may be equitably tolled if a plaintiff "has made a good faith error (*e.g.*, brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time." *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984). "However, equitable tolling is applied sparingly, and should not be utilized by courts 'out of a vague sympathy for particular litigants.'" *MacGregor*, 2010 WL 4167965, at *3 (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).

12

The case at hand does not include any apparent basis for equitable tolling. There is no suggestion that ▮▮▮▮ filed suit in the wrong court. And nothing prevented him from going to the federal courthouse in a timely manner. The EEOC never told him that he didn't have to file suit within 90 days of receiving Right to Sue Letter #1.

In fact, the EEOC did the opposite. The EEOC told ▮▮▮ that the clock was ticking in 2019. "You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost." *See* 6/20/19 Right to Sue Letter #1 (Dckt. No. 34-1, at 2 of 5) (emphasis in original).

Maybe ▮▮▮ had a mistaken belief that refiling the Charge of Discrimination gave him more time. But there is no indication that the EEOC ever retracted its statement about the deadline. It is not as if the EEOC told him that the clock was stopped, or that the 90-day deadline no longer applied to him in light of Charge of Discrimination #2. ▮▮▮ would need to come forward with some compelling reason to depart from normal rules and apply equitable tolling. But here, there is none.

The bottom line is straightforward. The complaint and the accompanying exhibits confirm that ▮▮▮ failed to file suit within 90 days of receiving the EEOC's right to sue letter. So his complaint is time barred.

### Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted.

Date: July 28, 2022

Steven C. Seeger
United States District Judge

13

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| █████████, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-2354 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| THOMAS J. DART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Defendants Thomas Dart and Cook County's motion to dismiss (Dckt. No. 16) is granted

without prejudice. It appears that the complaint is two years too late. The Court grants leave to

amend, so that Plaintiff can clear things up if he believes that he was timely.

Plaintiff █████████ is a Correctional Officer with the Cook County Sheriff's Office.

*See* Am. Cplt., at ¶ 4 (Dckt. No. 15). He claims that Sheriff Dart and his agents retaliated against

him because of his testimony in a 2018 deposition in an employment discrimination case. *Id.* at

¶ 23. During that deposition, ████ testified that certain members of the Sheriff's Office used

racial epithets toward another employee. *Id.* at ¶¶ 17–18.

████ alleges that Defendants retaliated against him a few different ways. They demanded

and obtained private medical information, forced him to participate in a fitness-for-duty

evaluation, secretly surveilled him while off-duty, and deprived him of benefits. *Id.* at ¶ 23.

On January 2, 2019, ████ filed a Charge of Discrimination with the Illinois Department

of Human Rights ("IDHR") and the EEOC, alleging that his employer retaliated against him for

his testimony. *Id.* at ¶ 7; *see also* Charge of Discrimination (Dckt. No. 15-1, at 5 of 5). His

charge number was 440-2019-01883 (that number is important – more on that later).



The complaint alleges that ███ exhausted his administrative remedies. *See* Am. Cplt., at ¶ 8 (Dckt. No. 15). Specifically, ███ claims that the EEOC issued a Right to Sue letter on January 12, 2021 ("2021 Right to Sue letter"), but it was returned as undeliverable. *Id.* at ¶ 10.

According to the complaint, the EEOC re-sent the letter to ███ former counsel (Heidi Sleper) on February 2, 2021. *Id.* She apparently received it that day, too, because Sleper sent the letter to ███ on the same day. *Id.* at ¶ 10 ("The letter was resent on February 2, 2021 by EEOC to Heidi Sleper, ███ former attorney."); *id.* at ¶ 9 ("Plaintiff received a right-to-sue letter from the EEOC on February 2, 2021 via his then-counsel, Heidi Sleper, Esq."); *see also id.* at ¶ 12 (referring to the "January 12, 2021 right-to-sue letter that ███ received on February 2, 2021").

███ attached the 2021 Right to Sue letter to his complaint. *See* 2021 Right to Sue Letter (Dckt No. 15-1, at 1 of 5); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). He also attached the accompanying cover letter from the EEOC dated February 2, 2021, as well as the email from the EEOC to his lawyer. *See* 2/2/21 Letter and Email (Dckt. No. 15-1, at 2–4 of 5). The 2021 Right to Sue letter included a charge number of 21B-2019-00873.

Note the difference between the charge number for the Charge of Discrimination and the charge number for the 2021 Right to Sue letter. ███ complaint attached a Charge of Discrimination from 2019 with a charge number of 440-2019-01883. *See* Charge of Discrimination (Dckt. No. 15-1, at 5 of 5). But the complaint also attached a Right to Sue letter from 2021 with a charge number of 21B-2019-00873. *See* 2021 Right to Sue Letter (Dckt. No. 15-1, at 1 of 5). So the number of the Charge of Discrimination (ending in -1883) does not match the number of the Right to Sue letter (ending in -0873).

2

The disparity is problematic. Each charge to the EEOC receives a unique identifying number (like a case number in federal court). And the EEOC then issues a right to sue letter that is tied to that unique charge number. So, a charge of discrimination with a charge number of 440-2019-01883 should receive a right to sue letter with a charge number of 440-2019-01883. And on the flipside, a right to sue letter with a charge number of 21B-2019-00873 should tie to a charge of discrimination with a charge number of 21B-2019-00873.

The numbers should match. But a charge of discrimination with a charge number of 440-2019-01883 and a right to sue letter with a charge number of 21B-2019-00873 is a mismatch.

████ filed this lawsuit on May 2, 2021. *See* Cplt. (Dckt. No. 1). That filing took place 89 days after receiving the 2021 Right to Sue letter on February 2, 2021. *See* Am. Cplt., at ¶ 11 (Dckt. No. 15). So he filed suit within 90 days of receiving the 2021 Right to Sue letter. He alleged two counts: (1) retaliation under Title VII, and (2) retaliation under the Illinois Human Rights Act ("IHRA"). *Id.* at Counts I & II.

Defendants now move to dismiss both counts under Rule 12(b)(6).[1] Defendants argue that ████ lawsuit is untimely because the EEOC issued the Right to Sue letter in 2019, not 2021. *See* Defs.' Mtn. to Dismiss, at 4–5 (Dckt. No. 16). Defendants also argue that ████ never received a right to sue letter from the IDHR at all, so he can't bring a state law claim. *Id.* at 9.

---

[1] A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

3

Defendants made other arguments, too, but for now, the Court only reaches the issue of exhaustion.

Congress placed time limits on employees when filing suit under Title VII. A plaintiff has 90 days from receipt of a right to sue letter from the EEOC to bring an employment discrimination claim. *See* 42 U.S.C. § 2000e-5(f)(1). "[T]wo types of receipt of a notice can start running the 90–day limitation period, and each does so equally well: actual receipt by the plaintiff, and actual receipt by the plaintiff's attorney, which constitutes constructive receipt by the plaintiff." *Reschy v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005).

Under the statute, ███ had 90 days to bring an employment discrimination claim, and the clock started ticking when he or his counsel received the Right to Sue letter from the EEOC. ███ alleges that the EEOC sent the letter to his lawyer, and his lawyer sent the letter to him, on February 2, 2021. *See* Am. Cplt., at ¶¶ 9–12 (Dckt. No. 15). He then filed suit on May 2, 2021. *See* Cplt. (Dckt. No. 1). If that's correct, then ███ met the deadline, because May 2 is 89 days after February 2.

Defendants moved to dismiss on the grounds that ███ is relying on the wrong Right to Sue letter. According to Defendants, the EEOC issued the Right to Sue letter in 2019, not 2021. So, as they see it, ███ is two years too late.

The argument implicitly rests on the charge numbers in the documents from the EEOC. Recall that ███ Charge of Discrimination has a different charge number than the Right to Sue letter. *Compare* Charge of Discrimination (Dckt. No. 15-1, at 5 of 5) (listing the charge number as 440-2019-01883), *with* 2021 Right to Sue Letter (Dckt No. 15-1, at 1 of 5) (listing the charge number as 21B-2019-00873). According to Defendants, the operative Right to Sue letter is the one with the number that matches the Charge of Discrimination. And that letter is from 2019.

4

To support their motion to dismiss, Defendants attached a Right to Sue letter dated June 20, 2019 (the "2019 Right to Sue letter"). *See* 2019 Right to Sue Letter (Dckt. No. 16-1). And sure enough, that 2019 Right to Sue letter contains the same charge number (440-2019-01883) as ███ 2019 Charge of Discrimination (440-2019-01883). So it's a match.

And it means that ███ is late, by a long shot. ███ needed to file suit within 90 days of receiving the 2019 Right to Sue letter, meaning the letter that authorized the filing of a claim based on the charges in the 2019 Charge of Discrimination. But instead of filing suit in 2019, ███ brought his claim in 2021. He filed this lawsuit on May 2, 2021, meaning 677 days after the date of the 2019 Right to Sue letter (dated June 20, 2019). So he's late.

Simply put, the complaint relies on the wrong Right to Sue letter. ███ alleges that his claim is timely based on the 2021 Right to Sue letter. But that letter was about something else – specifically, it was about whatever ███ claimed in the Charge of Discrimination with a charge number of 21B-2019-00873 (which is not in the record). ███ needed to file suit within 90 days of getting a Right to Sue letter with a charge number of 440-2019-01883, because *that* letter was the ticket to the courthouse for the Charge of Discrimination with a charge number of 440-2019-01883. And he didn't.

███ does not muster much of a response. He does not deny that the number on the Charge of Discrimination needs to match the number on the Right to Sue letter. And he does not deny that the charge numbers in the EEOC documents attached to his complaint don't match.

He also does not deny that the Charge of Discrimination and the Right to Sue letter must be about the same core allegation of discrimination. A plaintiff cannot file suit about Discrimination A as described in Charge of Discrimination #1 based on Right to Sue letter #2 about Discrimination B. They have to be about the same thing. *See* 42 U.S.C. § 2000e-5(f)(1)

5

(authorizing a lawsuit about "*the* charge," not *a* charge) (emphasis added). Put another way, a plaintiff cannot revive an untimely claim by getting a Right to Sue letter about *something else*. Getting a new Right to Sue letter doesn't bring a stale claim back to life.

██████ also does not take issue with the fact that Defendants are relying on a Right to Sue letter that they submitted with their motion to dismiss. Typically, the sufficiency of pleadings depends on the content of the pleadings (and nothing else, including extrinsic documents). But not always.

"[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Allowing attachments to a motion to dismiss to become part of the pleadings "is a narrow exception" and "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Levenstein v. Salafsky*, 164 F.3d 343, 347 (7th Cir. 1998). "The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). The Court can take judicial notice of public records, too. *See McGee v. United Parcel Serv., Inc.*, 2002 WL 449061, at *2 (N.D. Ill. Mar. 22, 2002) ("[T]he court may take judicial notice of matters of public record, including records of administrative bodies such as the IDHR.").

Here, ██████ referred to the Right to Sue letter in his amended complaint, and it is central to his claim. He expressly alleged that he exhausted his administrative remedies. *See* Am. Cplt., at ¶ 8 (Dckt. No. 15). Time and again, he alleged that the EEOC gave him the green light to file

this lawsuit by issuing a Right to Sue letter. *Id.* at ¶ 9 ("Plaintiff received a right-to-sue letter

from the EEOC . . . ."); *id.* at ¶ 11 ("This suit was filed on May 2, 2021, within 90 days of █████

receipt of the right-to-sue letter . . . ."). Those allegations made the Right to Sue letter part of the

pleadings for purposes of the motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6). And in any event,

█████made no such procedural objection, so the argument is waived.

█████ puts forward only one response. He raises a question about when he received the

2019 Right to Sue letter: "the date that Plaintiff's former legal counsel received the June 20,

2019 issued Right to Sue letter from the EEOC is disputed." *See* Pl.'s Resp. to Defs.' Mtn. to

Dismiss, at 4 (Dckt. No. 25).

Notice what █████ *doesn't* argue. He does not deny receiving the 2019 Right to Sue letter.

Instead, he raises a question about *when* he received it. He doesn't reveal why it is "disputed."

The Postal Service is good at delivering mail. So good, in fact, that presumptions apply.

"[A]bsent an established date of receipt, there is a presumption that letters are received five days

from the mailing date." *Hardiman v. Lipnic*, 455 F. Supp. 3d 693, 701–02 (N.D. Ill. 2020). But

"when the notice is delayed by fault of the plaintiff, the constructive receipt doctrine applies and

the 90-day clock starts running once delivery is attempted at the last address provided." *Reschy*,

414 F.3d at 823.

█████ does not deny receiving the 2019 Right to Sue letter. And he does not put his own

cards on the table about when he received it. He doesn't put forward a story about when it

eventually arrived. For example, he doesn't say that the 2019 Right to Sue letter mysteriously

arrived out of the blue in 2021, like a much-delayed message in a bottle. And he doesn't claim

that his lawyer received the 2019 Right to Sue letter in 2019, but didn't give it to him until 2021

(which wouldn't matter anyway, given constructive notice).

█████ has given this Court no reason to stray from the presumption. So, this Court presumes that normal rules – and normal mail delivery – apply here. █████ presumptively received the 2019 Right to Sue letter within a few days of June 20, 2019. The receipt of that letter started the 90-day clock ticking. And by waiting until 2021 to file suit, he waited too long.

Maybe there is more to the story, so the Court is dismissing the claim with leave to amend. Maybe █████ and his lawyer did not receive the 2019 letter, through no fault of their own. Or maybe █████ attached the wrong Charge of Discrimination to his complaint, and the 2021 Charge (not the 2019 Charge) is the right charge after all. Or maybe there is some other explanation.

For that reason, this Court will give █████ another chance. This Court grants Plaintiff leave to file an amended complaint by December 20, 2021. Any future complaint must attach the operative Charge of Discrimination and the operative Right to Sue letter. Any future complaint also must specify when Plaintiff or his counsel received the operative Right to Sue letter. The Court reminds Plaintiff of his obligations of candor under the Federal Rules.

The other claim in the complaint is a state law claim. █████ alleges retaliation under the IHRA. *See* Am. Cplt., at Count I (Dckt. No. 15). Defendants raise an exhaustion issue.

The IHRA requires a plaintiff to exhaust his administrative remedies with the IDHR by filing a charge of discrimination. *See Clark v. Law Offs. of Terrence Kennedy Jr.*, 2021 WL 308883, at *7 (N.D. Ill. 2021) (citing 775 ILCS 5/8-111(B)(1), and 775 ILCS 5/7A-102(G)(2)). From that moment forward, a claimant can exhaust his administrative remedies though a few routes.

Ten days after the filing of a charge, the IDHR notifies the complainant of his right – which must be exercised within 60 days of receiving the notice – to "opt out" of its investigation

8

of the charge and directly commence a civil action in court. *See* 775 ILCS 5/7A-102(B) ("The Department shall, within 10 days of the date on which the charge was filed, serve a copy of the charge on the respondent and provide all parties with a notice of the complainant's right to opt out of the investigation within 60 days[.]"); 775 ILCS 5/7A-102(C-1) ("At any time within 60 days after receipt of notice of the right to opt out, a complainant may submit a written request seeking notice from the Director indicating that the complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction.").

"If the complainant does not timely opt out of IDHR's investigation, he may file a civil suit once the IDHR investigates the charge and issues a report, *see* 775 ILCS 5/7A–102(D), or in the event that IDHR fails to issue a report within a year of the charge being filed, *see* 775 ILCS 5/7A–102(G)(2)." *See Smith v. City of Chicago*, 2021 WL 463235, at *5 (N.D. Ill. 2021).

So there are "three exhaustion pathways." *Id.* First, a claimant can opt out of the IDHR's investigation within 60 days, and then file suit. *Id.* Second, a claimant can decline to opt out, and then can wait at least one year while the state agency investigates the charge. *Id.* Third, a plaintiff can opt out and then file suit after the state agency issues a final decision. *Id.*; *see also Prusaczyk v. Hamilton County Coal, LLC*, 2020 WL 598377, at *2 (S.D. Ill. 2020); *Baranowska v. Intertek Testing Servs. NA, Inc.*, 2020 WL 1701860, at *3 (N.D. Ill. 2020).

A right to sue letter from the EEOC is not the same thing as a report from the state agency. Although the EEOC and IDHR have a workshare agreement, "a right to sue letter from the EEOC cannot be used as a substitute for a final order from the Commission." *Davis v.*

9

*Metro. Pier & Exposition Auth.*, 2012 WL 2576356, at *9 (N.D. Ill. 2012); *see also Petez v. Cook Cty. Sheriff's Off.*, 2020 WL 7772888, at *3 (N.D. Ill. 2020).[2]

Here, ███ alleges that he "exhausted his administrative remedies." *See* Am. Cplt., at ¶ 8 (Dckt. No. 15). ███ 2019 Charge of Discrimination was cross-filed between the EEOC and the IDHR, so he did submit a charge to the state agency. *Id.* at ¶¶ 7, 12.

At that point, the story gets muddled. The complaint alleges that "[m]ore than 60 days have elapsed since Plaintiff filed his charge of discrimination with the Illinois Human Right Department and the EEOC." *Id.* at ¶ 13. The significance of that 60-day period is not clear. Maybe Plaintiff was referring to the 60-day window to opt out of the investigation by the state agency.

But if so, ███ does not allege whether he opted out. It's not clear when the IDHR began and completed its investigation. The complaint does not allege whether the IDHR issued a report, either, or whether he ever asked the IDHR to review the EEOC's decision. If he received a report from the IDHR, it is unclear when he received it.

Plaintiff compounds the uncertainty by alleging that the *2021* Right to Sue letter from the EEOC "followed the Illinois Department of Human Rights' [sic] ('IDHR') investigation into ███ Charge." *Id.* at ¶ 12. Maybe the 2021 Right to Sue letter came after – not before – the IDHR's investigation because that investigation involved the allegations from the *2019* Charge of Investigation.

---

[2] Different procedures apply if a complainant submits a charge of discrimination with both state and federal authorities. "If the EEOC investigates the charge first, the IDHR takes no action on the charge – and the one-year period for the IDHR to investigate is tolled – until the complainant notifies it of the EEOC's determination." *Baranowska*, 2020 WL 1701860, at *3; *see also* 775 ILCS 5/7A-102(A-1)(1). At that point, the IDHR notifies the claimant that it "will adopt the EEOC's determination," unless the claimant requests a state review of the EEOC's decision. *See* 775 ILCS 5/7A-102(A-1)(3). But here, the complaint does not reveal which entity – the EEOC, or the IDHR – investigated ███ allegation first. The Court assumes that the EEOC investigated first because of the 2019 Right to Sue letter.

In any event, the lay of the land is uncertain on the exhaustion of the state law claim. So the Court dismisses the claim, with leave to amend.[3] The Court encourages ▓▓▓ to attach documents sufficient to show the exhaustion of administrative remedies on the state law claim. At that point, this Court can assess the federal and state claims (and possibly decide whether to exercise supplemental jurisdiction over the state law claim if there is no federal law claim).

The motion to dismiss is granted without prejudice. The Court grants Plaintiff leave to file a second amended complaint by December 20, 2021.

Date:    December 10, 2021

Steven C. Seeger
United States District Judge

---

[3] Strictly speaking, the exhaustion of administrative remedies is an affirmative defense. And a plaintiff does not have an obligation to plead around an affirmative defense when filing a complaint. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). For the federal claim, the Court concludes that the 2019 Right to Sue letter is part of the pleading (or, at least, that the Court can consider it at the motion-to-dismiss stage). And the Court also concludes that the 2019 Right to Sue letter shows that ▓▓▓ failed to file a timely claim because he waited more than 90 days. So, the Court can dismiss it because there appears to be no timely claim. For the state claim, the situation is a little different. There, based on the complaint itself, it is unknown whether ▓▓▓ exhausted his administrative remedies. Ordinarily, this Court would allow that claim to go forward because the complaint does not "unambiguously establish all the elements of the defense." *Id.* Even so, ▓▓▓ presumably is going to amend the complaint anyway. So there is no harm in dismissing the state count too, and ordering ▓▓▓ to refile with an amended state claim. It adds clarity to a murky situation, and moves the ball forward.